```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MOUSTAPHA MAGASSOUBA

                                  Petitioner,

           -against-

UNITED STATES OF AMERICA,
                           Respondent.
------------------------------------------------------------------X

12 CV 4337 (RPP)
03 CR 985 (RPP)

**OPINION & ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On June 1, 2012, Petitioner Moustapha Magassouba ("Magassouba"), pro se, filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for one count of conspiracy to distribute at least 100 grams, but less than a kilogram, of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B).[1] Magassouba seeks to vacate his sentence primarily on the ground that he was denied effective assistance of counsel in violation of the Sixth Amendment. He additionally contends that he was unfairly prejudiced by the trial judge's misconduct and prosecutorial misconduct, and that his sentence was imposed in violation of the Constitution and in excess of the maximum authorized by law. For the reasons stated below, Magassouba's § 2255 motion is DENIED.

**I.  FACTUAL BACKGROUND**

On August 12, 2003, the Government filed an indictment charging Magassouba with the crime of conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C.

---

[1] In a reply memorandum submitted on September 10, 2013, Magassouba clarified that, although he was sentenced to time served in his criminal case, he is currently under an immigration hold that permits the writ of habeas corpus as a remedy against his custody. (Reply to Gov't Resp. ("Pet'r's Reply Mem.") at 1-2, Sept. 10, 2013, 12 CV 4337, ECF No. 26.) In the event that the hold is lifted, Magassouba has asked that this matter be treated as a writ of coram nobis, a remedy for petitioners who are no longer in custody and therefore cannot pursue a writ of habeas corpus. Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998). Because Magassouba is still under an immigration hold at the time this petition is being decided, coram nobis relief is not a necessary alternative, and Magassouba's petition will be construed only as a motion for § 2255 relief.

1

§§ 812, 841(a)(1), 841(b)(1)(A). (Indictment at 1-2, Aug. 12, 2003, 03 CR 985, ECF No. 1.) Because of a delay resulting from mental health issues, evaluation, and detention of Magassouba, he did not go to trial until October 26, 2009. (Reply to Gov't Resp. ("Pet'r's Reply Mem.") at 3-4, Sept. 10, 2013, 12 CV 4337, ECF No. 26.) At trial, the Government presented evidence which showed that, beginning in early 2003, the Drug Enforcement Administration (the "DEA") worked with a confidential informant ("CI") to investigate a network of West African nationals believed to be importing and distributing heroin in New York City. (See Tr. of Proceedings Held on Oct. 26, 27, 28, 29, 30, 2009, and Nov. 2, 2009 ("Trial Tr. I") at 125, 03 CR 985, ECF No. 106.) DEA agents directed the CI to approach Falou Ndiaye, a suspected drug dealer, to set up various heroin and cocaine deals, which the CI recorded and the DEA reviewed. (Id. at 126.) During the course of the investigation, the DEA received authorization to intercept the cellular telephones of Ndiaye and other members of the network. (Id. at 145.) The recorded conversations, many which involved Magassouba and were connected to drug transactions between Ndiaye and the CI, were admitted into evidence at trial. (See id. at 233-75; 351-61; 373-77; 448-58.)[2]

On November 6, 2009, the jury found Magassouba guilty of a lesser count of conspiracy to distribute at least 100 grams but less than a kilogram of heroin in violation of 21 U.S.C. §§ 846, 841(b)(1)(B). (Tr. of Proceedings Held on Nov. 3, 4, 5, and 6, 2009 ("Trial Tr. II") at 1230-31, ECF No 105.) On November 24, 2009, Magassouba was sentenced to time served (75

---

[2] The evidence presented at trial also included (1) witness testimony from DEA agents who participated in the investigation, describing how the investigation began and what agents did to identify Magassouba as a member of the drug network (see e.g., Trial Tr. I at 122-27); (2) testimony from a DEA agent who described certain aspects of heroin and cocaine trade and distribution (id. at 693-701); (3) testimony from an expert witness who described how the drugs that were seized in 2003 tested positive for heroin (id. at 549-67); (4) a videotape in which Magassouba is seen entering Ndiaye's vehicle with Ndiaye and the CI, during which the recorded conversation indicated that Ndiaye was handing a sample of heroin to the CI (see Trial Tr. II at 919-24; Gov't Ex. 110R); (5) papers that were seized from Magassouba's person and home with contact information for members of the network (Trial Tr. I at 396-408); and (6) a phone seized from Magassouba, which was the same phone that had been involved in certain intercepted phone conversations. (Id. at 408-19.)

2

months), which was within the applicable Sentencing Guidelines range for that offense. (See Order, Nov. 24, 2009, 03 CR 985, ECF No. 107.)

Following his conviction, Magassouba filed an appeal, with the assistance of new counsel, in which he argued that: (1) the evidence at trial was insufficient for a jury to conclude beyond a reasonable doubt that he joined a heroin conspiracy; (2) this Court erred in admitting evidence related to drug transactions involving cocaine and the alleged co-conspirators other than Falou Ndiaye; (3) the Court erred in denying his pro se motion to suppress wiretap evidence[3]; (4) the Court erred in admitting heroin evidence in light of the fact that the actual heroin recovered by the Government was destroyed prior to trial; and (5) the Court improperly denied his request for a multiple conspiracies charge. United States v. Magassouba, 433 F. App'x 10, 12-13 (2d Cir. 2011). On May 11, 2011, the Second Circuit rejected each of Magassouba's claims and affirmed this Court's judgment. Id. The Supreme Court denied Magassouba's petition for a writ of certiorari on October 3, 2011. United States v. Magassouba, 132 S.Ct. 386; reh'g denied, 132 S.Ct. 1165 (2012).

On June 1, 2012, Magassouba timely filed the instant § 2255 motion, proceeding pro se. (Pet. for Writ of Habeas Corpus ("Pro Se Pet."), 12 CV 4337, ECF No. 1.) The Government filed a letter in opposition to Magassouba's petition on January 8, 2013. (Gov't Letter in Resp. to Pro Se Habeas Pet. ("Gov't Letter"), ECF No. 16.)

Subsequent to filing his initial § 2255 petition, Magassouba requested, and was appointed, counsel to represent him in this matter. (See Order, July 3, 2013, ECF No. 23.) Magassouba's appointed counsel filed a reply to the Government's response to Magassouba's petition on September 10, 2013. (Pet'r's Reply Mem.) Magassouba also filed a supplementary

---

[3] This Court permitted Magassouba to raise a number of arguments pro se prior to and during trial, outside the presence of the jury, in addition to the arguments made by his trial counsel.

3

reply pro se. (Pet. Supplementary Reply ("Pro Se Reply"), ECF No. 27.)

## II.  LEGAL STANDARD

28 U.S.C., § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Relief is available under § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation mark and citation omitted). The Court is mindful that Magassouba, in his initial motion and in the supplementary reply, was proceeding pro se, and thus these submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995), and read to "raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

Absent a fundamental miscarriage of justice, a petitioner who fails to raise an issue on direct appeal cannot subsequently raise the issue in a § 2255 petition, unless he can show cause for his failure to raise the issue on appeal. See Murray v. Carrier, 477 U.S. 478, 491 (1986); Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999); but see United States v. Massaro, 538 U.S. 500 (2003) (creating exception to § 2255 procedural bar for claims not raised on appeal for ineffective assistance of counsel claims). Further, a petitioner may not employ a habeas petition to relitigate issues that have been raised and considered on direct appeal. See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001). Reconsideration is only permitted where there has been an intervening change in the law and the new law would have resulted in a different

4

disposition. See id.

### III. DISCUSSION

#### A. Ineffective Assistance Claims

To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance was deficient if it "fell below an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

In addition to demonstrating an unreasonable error by counsel, a petitioner must show that the deficiency in counsel's performance had an effect on the result; that is, that the error was prejudicial to the petitioner. Id. at 691-96. A petitioner demonstrates prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687.

In the case of a collateral challenge based on ineffective assistance of counsel claims, the Second Circuit has recognized "the mandate rule," which bars re-litigation of issues already decided on direct appeal. Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). In addition to barring claims that were explicitly raised on direct appeal, the mandate rule "also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Id.; see also United States v. Pitcher, 559 F.3d 120, 124 (2d Cir. 2009) (rejecting petitioner's § 2255 ineffective assistance claims because they were "premised on the same facts and rest[ed] on the

same legal ground" as claims litigated on direct appeal).

### 1. Counsel's Alleged Failure to Move to Exclude Expert Testimony

In the reply memorandum, counsel for Magassouba first alleges that Magassouba's trial counsel was ineffective for not moving to exclude certain evidence from trial. (Pet'r's Reply Mem. at 10, 13-14.) Specifically, he argues that defense counsel failed to object when "an agent's interpretation of the wiretap conversations, claimed to be coded and decoded by the same agent" was admitted into evidence. (Id. at 14.) But, contrary to these assertions, the Government did not present an expert witness who testified about the meaning of any codes or "about the meaning of conversations in general."[4] (Id. at 18.) The only DEA agent whom the Government qualified as an expert in this case was Special Agent Christopher Quinn. (Trial Tr. I at 687-701.) Special Agent Quinn's testimony was limited to an explanation of the countries of origin from which different types of heroin are imported, the colors and purity levels of different types of heroin, and the average heroin and cocaine prices in New York City in 2003. (Id. at 693-701.)

Special Agent Quinn did not testify, as Magassouba's counsel alleges in his reply memorandum, about the meaning of "code words" used in recorded phone conversations,[5] (see Pet'r's Reply Mem. at 18), nor did he testify about having any direct involvement in Magassouba's investigation. Because Special Agent Quinn's testimony—regarding the colors and prices of heroin—may have helped the jury infer for themselves whether the recorded phone

---

[4] In fact, Magassouba's trial counsel moved for summary judgment at the close of the Government's case by arguing that "what's missing here from the government's case is anybody that could interpret the conversations the way the government wants to interpret the conversations. The words themselves are what the words are, but there's no expert, there's no informant, and there's nobody else to interpret the conversations the way the government wants them to." (Trial Tr. II at 1020.)

[5] Though the Government did, at one point, ask Special Agent Quinn about his familiarity with the use of "code" among drug dealers to discuss drug transactions, Magassouba's trial counsel objected to this line of questioning, based on the Government's indication in its expert notice that Special Agent Quinn would not testify about codes, and the question was withdrawn. (Trial Tr. I at 699-700.)

conversations played during trial were coded conversations about heroin and diluting heroin, this testimony was properly admitted pursuant to the Federal Rules of Evidence. See Fed. R. Evid. 702 (expert testimony is permissible where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

Magassouba's counsel maintains that under United States v Mejia, 545 F.3d 179 (2d Cir. 2008), Special Agent Quinn should not have been permitted to testify as an expert. He argues that "the failure of trial counsel to cite the Court to Mejia, to move to preclude the proffered alleged expert testimony . . . given the tissue paper thin amount of evidence against Petitioner . . . led to conviction." (Pet'r's Reply Mem. at 21-22.) However, Mejia, which held that a case agent cannot provide factual testimony about matters that require no specialized knowledge, does not apply to this case. 545 F.3d 179, 196 (2008); see also id. at 189 (noting that *admission of expert testimony was proper* where "the Government had called an FBI agent to testify as an expert about terms such as 'captain,' 'capo,' 'regime' and 'crew,'" and the testimony "aided the jury in its understanding of recorded conversations between the two defendants") (citing United States v. Ardito, 782 F.2d 358, 363 (2d Cir. 1986)) (emphasis added).

Since the expert testimony in this case was not excludable under Mejia, Magassouba's trial counsel had no reason to move to preclude the expert testimony presented by citing the court that case. Therefore, trial counsel's performance cannot be deemed deficient under Strickland. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (failure to make meritless argument does not rise to level of ineffective assistance). For all these reasons, Magassouba's ineffective assistance claim for failure to move to exclude expert testimony is denied.

### 2.   Counsel's Alleged Failure to Seek "Youngblood Charge"

In the reply memorandum, counsel for Magassouba also argues that trial counsel was

7

ineffective for failing to seek what he refers to as a "Youngblood charge," regarding the drugs that were destroyed during the six years between Magassouba's arrest and his trial.[6] (Pet'r's Reply Mem. at 24; see also Pro Se Pet. at 27-28.) He argues that in Youngblood v. Arizona, 488 U.S. 51 (1988), the Supreme Court "stated clearly that the defendant is *entitled* to an appropriate charge . . . that if produced, [destroyed drug evidence and packaging] would be contrary to the government contention without regard to the issue of good or bad faith." (Pet'r's Reply Mem. at 23 (emphasis added).) This was not part of the holding in Youngblood.

Youngblood stands for the principle that the failure of police to preserve potentially useful evidence is not a denial of due process of law unless the defendant has shown bad faith on part of police. 488 U.S. at 58. Although the Supreme Court noted in Youngblood that the state-level trial judge in that case gave an adverse-inference instruction[7] to the jury, 488 U.S. at 54, the brief reference to the trial court's jury charge in that opinion was dicta, and was not part of the Court's holding. See Griffin v. Spratt, 969 F.2d 16, 21-22 (3rd Cir. 1992) ("[T]here is nothing in the opinion in Youngblood that suggests that the decision rested in any way on this instruction."). Neither the Supreme Court nor the Second Circuit has ever held that a defendant is entitled to an adverse-inference jury instruction when the Government has produced evidence showing that a controlled substance has been destroyed by mistake prior to trial. Therefore, Magassouba's habeas counsel is incorrect where he argues that Magassouba was "entitled" to an

---

[6] Prior to trial, the Government conceded that the heroin evidence seized during the investigation of Magassouba was destroyed by a DEA agent who believed by mistake that, due to the time elapsed, the evidence no longer needed to be preserved. (Trial Tr. I at 39.) Arguing that the facts surrounding the destruction of the evidence supported an inference of bad faith and that the evidence may have been exculpatory, defense counsel moved to exclude the drug evidence from trial; this motion was denied. (Id. at 72.) Although the admission of the destroyed heroin evidence issue was litigated again on direct appeal, the ineffective assistance claim raised here, as related to the jury charge, is a separate issue. Therefore, Magassouba's ineffective assistance claim is not procedurally barred.

[7] Specifically, the Supreme Court noted in the factual background section of its Youngblood opinion that the state-level trial court in Arizona v. Youngblood "instructed the jury that if they found the State had destroyed or lost evidence, they might 'infer that the true fact is against the State's interest.'" 488 U.S. at 54 (citing trial tr.). This is the adverse inference instruction that Magassouba's habeas counsel references.

8

adverse-inference instruction. (Pet'r's Reply Mem. at 23.)

There is also no merit to Magassouba's counsel's argument that, had an adverse-inference instruction been given, a jury might have inferred that "an examination of the [destroyed evidence] would have produced evidence that [Magassouba's] fingerprints were not on the item," and therefore found his defense more credible. (Pet'r's Reply Mem. at 23.) The trial record shows that Magassouba's defense counsel *made that very argument* in his summation, during which he argued that the jury should consider the lack of fingerprints on the drug evidence against Magassouba. (See Trial Tr. II at 1088 ("Those items, which again nobody saw delivered, those items also weren't submitted for fingerprint analysis.").) But given the weight of evidence against Magassouba, indicating that he did participate in the conspiracy to distribute heroin (see supra note 2 and accompanying text), there is little reason to conclude that an adverse-inference jury instruction about the destroyed evidence would have resulted in Magassouba being found not guilty of the conspiracy. See Strickland, 466 U.S. at 687 (requiring a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Because there has been no showing that Magassouba's trial counsel's actions were prejudicial to Magassouba, this ineffective assistance claim fails.

3. **Counsel's Alleged Failure to Move to Suppress Wiretap Evidence**

Magassouba's counsel next argues that trial counsel's failure to pursue suppression of the wiretap evidence used against him at trial was ineffective assistance. (Pet'r's Reply Mem. at 25; see also Pro Se Pet. at 14, 23.) Specifically, he states in his reply memorandum that the "evidence at trial contradicted the averments of the agents in the wiretap applications or demonstrated material omissions" (id. at 27), and therefore, his counsel should have requested a hearing at that time under Franks v. Delaware. 438 U.S. 154, 155-56 (1978) (holding that

"where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request"). Magassouba's counsel does not specify any evidence presented at trial that would have contradicted any agent's affidavit in support of the 2003 wiretap application and allowed Magassouba to make such a motion during or after trial. Nevertheless, he asserts that Magassouba was prejudiced by trial counsel's decision not to pursue suppression of the wiretap evidence, at the time of trial, on these grounds. (Pet'r's Reply Mem. at 25; Pro Se Pet. at 9.)

This claim is premised on the same underlying issue that Magassouba raised, with the assistance of appellate counsel, on direct appeal: whether the district court erred in denying Magassouba's pro se motion to suppress the wiretap evidence. Magassouba, 433 F. App'x at 13. The Second Circuit rejected this argument, finding that wiretap evidence was "properly admitted." Id. Because the Second Circuit reviewed the admission of wiretap evidence based on the warrant affidavits, as well as a full record of the trial proceedings, the claim has already been adjudicated, and the mandate rule precludes re-litigation in a § 2255 motion. See Pitcher, 559 F.3d at 123 (precluding re-litigation of claim that rested on the same legal ground as claim already resolved by the appellate court).

Moreover, while Magassouba's counsel asserts, in this ineffective assistance claim, that there were "false and misleading statements and omissions" in the warrant affidavits, he does not specify these statements or omissions with any level of detail. (Pet'r's Reply Mem. at 31.) He states only that "[s]urveillance disclosed at trial demonstrated that the affidavits as submitted to the Court to obtain the wiretaps omitted evidence [of] what the agent knew, including about the

10

particular location of where one of the drug dealers worked and did drug business as observed by the agents." (Id. at 37.) Beyond this statement, which is not supported by a citation to the record, Magassouba does not provide any basis for his assertion that statements in the warrant affidavits were false, incomplete, or misleading.

Magassouba's unsupported allegations do not resemble the situation in Franks, which requires an evidentiary hearing only when there is a showing of "deliberate falsehood" or "reckless disregard for the truth" in the warrant affidavit. Franks, 438 U.S. at 156 (noting that "the challenger's attack must be more than conclusory"). Given the dearth of facts in support of Magassouba's argument, it is not likely that a Franks hearing would have been granted upon trial counsel's request. Therefore, the decision not to request such a hearing was not ineffective assistance.

### 4. Counsel's Alleged Failure to Object to Introduction of Cocaine Evidence

Counsel for Magassouba also alleges that trial counsel failed to "thoroughly object" to the introduction of cocaine evidence that was admitted at trial (Pet'r's Reply Mem. at 5), and he argues that the Court's limiting instruction to the jury was not enough to cure the prejudice that resulted.[8] (Id. at 5, 40-42; see also Pro Se Pet. at 14, 21.) This claim, like many of Magassouba's claims, is grounded in the same legal basis as a claim that was argued and resolved on direct appeal. See Magassouba, 433 F. App'x at 13 (finding "[h]ere, the district court did not abuse its discretion in admitting the cocaine evidence because the cocaine transactions were intertwined with the heroin transactions and involved similar conduct").

---

[8] In his initial petition, proceeding pro se, Magassouba also argues, just as he argued in his direct appeal, that testimony related to alleged co-conspirators other than Falou Ndiaye should not have been admitted into evidence at trial (Pro Se Pet. at 21), and that the Court improperly denied his request for a multiple conspiracies charge. (Id. at 22.) Because these arguments are identical to the arguments Magassouba raised on appeal and have not been reformulated as ineffective assistance claims, the Court is barred from re-considering them here.

11

In this petition, Magassouba's counsel has rephrased the objection to the admissibility of cocaine evidence as an ineffective assistance claim, but this claim is "simply the inverse" of the argument Magassouba made on direct appeal—that cocaine evidence should not have been admitted. Pitcher, 559 F.3d at 123. The Second Circuit dismissed that argument as meritless, and thus, the ineffective assistance claim is also meritless.

### 5. Counsel's Failure to Impeach Certain Witnesses

Magassouba additionally argues that the Government denied his Sixth Amendment right to confront the witnesses against him by introducing recorded communications of certain co-conspirators during trial. (Pro Se Pet. at 17.) Because Magassouba could have, but failed, to raise this issue on direct appeal, Magassouba is procedurally barred from raising this claim in a § 2255 petition.[9] See Murray, 477 U.S. at 491. In his reply memorandum, Magassouba's counsel reframes Magassouba's Confrontation Clause argument as an ineffective assistance claim, arguing that trial counsel was ineffective "in that he did not exercise the right to place before the fact finder any evidence that could serve to impeach a co-conspirator declarant." (Pet'r's Reply Mem. at 44.) Because ineffective assistance claims can be raised for the first time in a habeas petition, Magassouba may assert this claim in his § 2255 motion, even though he did not show adequate cause for failing to raise the claim on direct appeal. See Massaro, 538 U.S. at 506.

Nevertheless, this claim is without merit because Magassouba does not make a showing that any material to impeach the credibility of co-conspirator declarants was available to trial counsel. Furthermore, there has been no showing that such impeachment material would have been helpful to Magassouba's defense at trial, which was largely based on the theory that

---

[9] Even if Magassouba's Confrontation Clause argument were not procedurally barred, it would fail on the merits. This Court found that the recorded conversations introduced at trial were admissible as non-testimonial statements made by co-conspirators, during the course of and in furtherance of a conspiracy. See United States v. Saget, 377 F.3d 223, 229-30 (2d Cir. 2004). The Confrontation Clause does not apply to non-testimonial statements, see id., and therefore, Magassouba had no constitutional right to cross-examine the declarants.

12

Magassouba merely associated with the conspirator declarants who intentionally participated in a conspiracy. (See e.g., Trial Tr. II at 1094.) Because trial counsel conceded that the co-conspirator declarants were drug dealers (see id.), the fact that trial counsel either did not seek or chose not to introduce evidence that would have impeached the credibility of co-conspirator declarants was undoubtedly a matter of trial strategy. Therefore, it does not fall below any objective performance standard under Strickland. See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("[A] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision.") (internal citation and quotation omitted).

### B. Claims Related to Trial Judge

Magassouba also alleged, in his initial habeas petition, that he was unfairly prejudiced by the Judge because he stated to trial counsel, outside the presence of the jury, that "he doesn't want [a] mistrial in this case" and because he responded to certain clarification questions that jury members asked in the course of their deliberation. (Pro Se Pet. at 18-20.) However, this claim lacks merit. The Second Circuit has held that reversal for judicial bias is warranted "only where an examination of the entire record demonstrates that the jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury." United States v. Horsford, 422 F. App'x 29, 30 (2d Cir. 2011) (internal citation and quotation omitted). Here, there are no facts presented by Magassouba indicating that Magassouba was denied a fair trial based on any remarks by the Court.

### C. Claims Related to Prosecutorial Misconduct

Magassouba also argues, in his initial habeas petition, that prosecutorial misconduct prejudiced his case. Specifically, he argues that the Government caused unnecessary delays in

the progress of his case, violating his Speedy Trial rights, and that the Government used false evidence and withheld favorable evidence in order to obtain his conviction. (Pro se Pet. at 28-29.) These arguments are meritless, however, because they are not supported by citation to any evidence in the record. Contrary to Magassouba's claims, the significant delay between Magassouba's arrest and his trial was not due to prosecutorial misconduct, but rather, was because, upon motion of Magassouba's prior counsel, Magassouba was found incompetent to stand trial. Thus, reversal is not warranted on Speedy Trial grounds or on any grounds related to prosecutorial misconduct.

### D. Claims Related to Sentencing

Magassouba additionally alleges that his sentence was unconstitutional, arguing that he served more time than was recommended for his offense under the Sentencing Guidelines. (Pro Se Pet. at 10-13.) This claim is also meritless. For a person with no criminal history convicted of conspiracy to distribute at least 100 grams, but less than a kilogram, of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), the applicable Sentencing Guidelines range is 63 to 78 months. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(7) (2004). Because Magassouba was sentenced to time served of 75 months, his sentence was within the applicable Guidelines range.

### IV. CONCLUSION

For the reasons stated above, Magassouba's § 2255 Motion is DENIED. Magassouba's request for an evidentiary hearing is also DENIED.

IT IS SO ORDERED.

Dated: New York, NY
October 2̶4̶ 2013

_____
Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this order were faxed to:**

*Counsel for Petitioner, Moustapha Magassouba:*
David L Lewis
Lewis & Fiore
225 Broadway, Suite 3300
New York, NY 10006
Fax: (212) 964-4506

*The Government:*
Natalie Lamarque
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
Fax: (212) 637-2937